**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DANNY RAY BLACKWELL,

     Petitioner,

vs.            Case No.:  3:12-cv-518-J-32JBT

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

     Respondent.

_____/

**<u>ORDER</u>**

### I.  **Status**

Petitioner, an inmate of the Florida penal system who is proceeding pro se, is proceeding in this action on a Petition (Doc. # 1) for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner challenges his December 7, 2005 state court (St. Johns County) conviction for robbing a bakery. Petitioner was convicted following a jury trial, and the state court sentenced him to 30 years in prison as a habitual violent felony offender. (<u>See</u> Ex. F, G, H). Petitioner raises six grounds for relief. Respondents have responded. <u>See</u> Response to Petition (Doc. # 9) (Response); Supplemental Response to Petition (Doc. #14).[1] Petitioner has replied. <u>See</u>

---

[1]  References to docket entries in this civil § 2254 case will be denoted as "Doc. ____." The Court will refer to the exhibits submitted with the State's response (Doc. 9 at 21-22; Doc. 14 at 13) as "Ex." For documents and exhibits filed on CM/ECF, the Court will refer to the page number in the upper right hand corner assigned by CM/ECF. Otherwise, the Court will cite the page number imprinted on the bottom center of each page of the pertinent exhibit, or if there is no page number on the

1

Petitioner's Reply to Respondents' Response (Doc. # 17) (Reply). Thus, this case is ripe for review.[2]

## II.   Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir.2003), an evidentiary hearing will not be conducted.

## III.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214 (hereinafter AEDPA)[3], this Court's review "is 'greatly

---

bottom center of the page, the Court will cite the page number imprinted on the upper right corner of each page of the exhibit.

[2]     Respondent fully sets forth the procedural history; therefore, the Court will not repeat it. See Response at 1-4.

[3]     "[T]he highest state court decision reaching the merits of a habeas petitioner's claim is the relevant state court decision." Newland v. Hall, 527 F.3d 1162, 1199 (11th Cir.2008). Additionally, in Harrington v. Richter, —— U.S. ——, ——, 131 S.Ct. 770, 785 (2011), the United States Supreme Court held that § 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been

circumscribed and highly deferential to the state courts.'" <u>Stewart v. Sec'y, Dep't of Corr.</u>, 476 F.3d 1193, 1208 (11th Cir.2007) (citing <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11th Cir. 2002)).

> Under AEDPA, when a state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," <u>id.</u> § 2254(d)(2). A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.[4] <u>Id.</u> § 2254(e)(1); <u>Ferrell v. Hall</u>, 640 F.3d 1199, 1223 (11th Cir.2011).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, —— U.S. ——, ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[A]n

---

'adjudicated on the merits.' " The Court explained, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784–785.

[4]   "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir.2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253–54 (11th Cir.2013).

In his reply brief, Petitioner contends that because the state court denied some of his claims without conducting an evidentiary hearing, the state court's factual determinations on those claims are presumably unreasonable.  (See Reply at 2-3).  However, the majority of courts of appeal have concluded that, under AEDPA, a state court need not conduct an evidentiary hearing for its factual determinations to be entitled to deference.  Hibbler v. Benedetti, 693 F.3d 1140, 1147 (9th Cir. 2012), cert. denied 133 S. Ct. 1262 (2013); Cowans v. Bagley, 639 F.3d 241, 246-48 (6th Cir. 2011) ("Nothing in § 2254(d)(2) … suggests we defer to a state court's factual findings only if the state court held a hearing on the issue."); Richards v. Quarterman, 566 F.3d 553, 563 (5th Cir. 2009) ("the state habeas court's factual determinations, including its credibility findings, are entitled to a presumption of correctness under § 2254(e)(1), regardless of whether the state court held a full and fair hearing"); Rolan v. Vaughn, 445 F.3d 671, 679–80 (3d Cir. 2006) ("AEDPA does not provide that a federal habeas court should, before affording deference to state court determinations, evaluate the procedural adequacy of state court proceedings or whether the state court properly exercised its jurisdiction. AEDPA, unlike prior law, has no requirement that the state court hold a hearing or comply with other prerequisites to deference listed in the previous habeas statute.") (quotation marks omitted); cf. Harrington, 562 U.S. at 96-100, 131 S. Ct. at 783-85 (explaining that deference under 28 U.S.C. § 2254(d)(1) applies even to a one-line summary order).  Thus, that a state court reaches certain

4

factual conclusions without conducting an evidentiary hearing does not mean that such determinations were per se unreasonable under § 2254(d)(2).

## IV.   Ineffective Assistance of Counsel

Petitioner raises several ineffective assistance of counsel claims. "To prevail on th[ese] claim[s], [Petitioner] must meet both the deficient performance and prejudice prongs of Strickland." Wong v. Belmontes, 558 U.S. 15, 16, 130 S.Ct. 383, 175 L.Ed.2d 328 (2009) (per curiam) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness."  A court considering a claim of ineffective assistance must apply a "strong presumption"[5] that counsel's representation was within the "wide range" of reasonable professional assistance.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

---

[5]    A court begins "with the 'strong presumption' that counsel's conduct was reasonable, Strickland, 104 S.Ct. at 2065; and that presumption is even stronger when we examine the performance of experienced counsel. Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir.2000) (en banc)." Walls v. Buss, 658 F.3d 1274, 1279 (11th Cir.2011) (per curiam). The record reflects that Petitioner's attorney at trial, Anne Marie Gennusa, had been practicing law since 1994.  (Ex. S at 5). Moreover, she had handled numerous criminal jury trials and bench trials, and had worked as both an assistant public defender and a prosecutor prior to representing Petitioner.  (Id. at 5-6).

Harrington v. Richter, —— U.S. ——, 131 S.Ct. 770, 787–88, 178 L.Ed.2d 624 (2011) (internal citations omitted).  Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir.2010) (citation omitted).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable-a substantially higher threshold." Schriro, [550 U.S. at 473]. And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). Thus, the standards created by Strickland and § 2254(d) are both highly deferential, "and when the two apply in tandem, review is 'doubly' so[.]"  Harrington, 131 S.Ct. at 788 (quoting Knowles, 556 U .S. at 123).

## V.  Findings of Fact and Conclusions of Law

## A. Ground One

In his first ground, Petitioner argues that counsel gave ineffective assistance by failing to adequately investigate a mistaken identity defense.   Specifically, Petitioner argues that counsel was ineffective for not presenting his eyeglasses to the

jury as proof that the victim misidentified him as the robber. Whereas the victim described the robber as wearing "thick" lensed glasses (see, e.g., Ex. D at 30, 67, 137, 141), Petitioner states that he actually owned glasses with thin lenses (Petition at 4). Additionally, Petitioner states that his glasses would not stay in their frames unless he tilted his head back, such that he could not have committed the robbery without the glasses falling out. (See id.). Petitioner argues that presenting his glasses to the jury would have created a reasonable doubt as to the identity of the robber, and counsel was ineffective for failing to investigate, discover, or present the glasses to the jury. (Id.).

Petitioner raised this issue in his state motion for post-conviction relief, which he filed pursuant to Florida Rule of Criminal Procedure 3.850. The state trial court rejected the claim without an evidentiary hearing and explained as follows:

> In Ground Two of Defendant's Motion, Defendant alleges ineffective assistance of counsel based on trial counsel's failure to investigate and/or present evidence to support misidentification by the victim. Defendant alleges that trial counsel failed to present his glasses to the jury. Defendant's allegations in Ground Two are conclusively rebutted by the record. The State argues that the record shows that the victim identified Defendant by his face and that trial counsel vigorously cross-examined the victim as to the identification. (See TT, Vol. I, pages 41-68, attached hereto as Appendix A,)[6] This Court finds more on point the cross examination of Officer Etheridge by trial counsel, who when questioned did not know the whereabouts of Defendant's glasses. (See TT, Vol. I, page 167, attached hereto as Appendix B)[7] Further, in the cross examination of Deputy Leigh Ann Shimer, the booking deputy for Defendant, counsel asked whether or not Defendant had on glasses at booking. Deputy Shimer said the Defendant was wearing glasses at booking, but does not know where the glasses went. (See TT, Vol. II,

---

[6]   Ex. D at 41-68; Ex. R at 86-115.
[7]   Ex. D at 167; Ex. R. at 116-118.

pages 254-55, attached hereto as Appendix C.)[8]   The record clearly indicates that the whereabouts of the Defendant's glasses were unknown, and therefore, counsel could not have failed to investigate the whereabouts of the glasses or present the glasses as evidence.

(Ex. R at 82-83).   Petitioner appealed the denial of post-conviction relief, which Florida's Fifth District Court of Appeal "per curiam affirmed" without a written opinion.  Blackwell v. State, 83 So. 3d 740 (Fla. 5th DCA 2012); (Ex. Z).

Thus, there are qualifying opinions under AEDPA from the state trial and appellate courts.  Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application thereof, and was not based on an unreasonable determination of the facts.  A review of the trial transcript confirms what the state trial court found: that defense counsel thoroughly cross-examined the victim about her identification of Petitioner (Ex. R at 82-83; accord Ex. D at 41-68), and that counsel further cross-examined two police officers concerning the whereabouts of Petitioner's glasses, but the glasses were simply missing.  (Ex. R at 82-83; accord Ex. D at 166-67, 254-55).  Counsel vigorously pursued the mistaken identification defense, both in cross-examination and closing argument (see Ex. D at 297-313).  However, counsel cannot be faulted for the fact that Petitioner's glasses had been lost, and so could not be presented to the jury to support a misidentification defense.   Accordingly, the trial court did not unreasonably determine that counsel conducted a competent investigation.

---

8        Ex. D at 254-55; Ex. R at 119-22.

Additionally, there is not a reasonable probability that presenting Petitioner's glasses to the jury would have produced an acquittal. The victim identified Petitioner as the robber following a "show-up" identification procedure (the propriety of which is addressed later), which occurred less than an hour after the robbery. (Ex. D at 36-40). The victim became "100%" certain that Petitioner was the robber once he put on his glasses. (Id. at 39-40). Considering that Petitioner wearing his glasses only made the victim more confident in her identification, there is not a reasonable likelihood that generating the same glasses at trial would have undermined the in-court identification. Therefore, Petitioner did not suffer prejudice from counsel not presenting the glasses to the jury. Petitioner is not entitled to relief on Ground One.

## B. Ground Two

In his second ground for relief, Petitioner complains that counsel gave ineffective assistance at trial by eliciting a police officer's opinion about his guilt. (Petition at 5). The following exchange occurred at trial:

> [DEFENSE COUNSEL]: Okay. You believed automatically at that point that [Petitioner] was guilty?
>
> [OFC. ETHERIDGE]: No, I believed he was guilty when [the victim] identified him.

(Ex. D at 168). Petitioner contends that counsel performed deficiently for eliciting the above testimony in the first place, as well as for not moving to strike the question and answer, not moving for a curative instruction, and not moving for a mistrial. (Petition at 5). Petitioner raised this issue in his state motion for post-conviction relief. The state trial court found that Petitioner had provided facially sufficient

evidence to support an evidentiary hearing on this claim, and so granted him one.

(Ex. R at 83).  Following the hearing, however, the state court denied the claim and

explained as follows:

> In Ground Three, the Defendant alleges [that] trial counsel was ineffective for eliciting opinion testimony from a Corporal Etheridge that the Defendant was guilty, and then failing to move the Court either to strike that testimony, to issue a curative instruction, or to declare a mistrial.  At the evidentiary hearing, the Defendant asserts it was unreasonable strategy to elicit such testimony.  The Defendant claims the jury's opinion was influenced by the Corporal's belief that the Defendant was guilty.  The Defendant also claims the jury attributed a great deal of credibility to Corporal Etheridge's testimony, given the Corporal was a member of law enforcement.
>
> At the evidentiary hearing, Ms. Genussa [sic] [Petitioner's trial counsel] testified her trial strategy was to show Corporal Etheridge was biased toward the Defendant and that he had a preconceived notion of the Defendant's guilt.  She stated that the nature of the showup, together with other factors, indicated the primary witness might have been coached and led her to adopt this strategy.  As a result, Ms. Gennusa pursued a line of questioning designed to elicit evidence of the Corporal's alleged bias.  Ms. Gennusa testified she was not looking to elicit opinion testimony.  She further testified that, strategically, the testimony the Corporal gave is the testimony she was attempting to elicit.
>
> "Generally, 'a witness's opinion as to the guilt or innocence of the accused is not admissible.'"  Battle v. State, 19 So. 3d 1045, 1047 (Fla. 4th DCA 2009) (quoting Martinez v. State, 761 So. 2d 1074, 1079 (Fla. 2000)).  This precept is borne out by the Florida Evidence Code.  Martinez, 761 So. 2d at 1079.  The Evidence Code "provides that '[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact.'"  Id., (quoting Fla. Stat. § 90.703).  Although this would appear to allow for the admissibility of relevant opinion testimony regarding a defendant's guilt, the Evidence Code precludes this type of testimony on the ground its probative value "is substantially outweighed by unfair prejudice to the defendant."  Id. (citing Fla. Stat. § 90.403); accord, Glendening v. State, 536 So. 2d 212, 221 (Fla. 1988); Smith v. State, 674 So. 2d 791, 794 (Fla. 5th DCA 1996).  "The danger of prejudice increases when an investigating officer is permitted to offer an opinion

as to the defendant's guilt."   <u>Battle</u>, 19 So. 3d at 1047-48 (citing <u>Martinez</u>, 761 So. 2d at 1080).

In the instant cause, Ms. Gennusa asserts she was looking to elicit from Corporal Etheridge testimony that he had a preconceived notion of the Defendant's guilt, not testimony that the Defendant was guilty.  Her line of questioning bears this out.

> Q:   You would agree with me that the suspect description in those critical first minutes is crucial to your investigation, is it not?

> A:   Right.

> Q:   And the more information you have, the less likely you are arrest to [sic] somebody or take away somebody's liberty who may be innocent; isn't that true?

> A:   True.

> Q:   So when you say that it didn't matter what color eyes or anything, is that the policy of St. Augustine, or is that just a decision you made?

> A:   I would say the majority of black males have brown eyes and black hair.  I mean, he matched the description down to the glasses.

> Q:   Okay.  So assumptions would come into play and that would be acceptable in questioning or taking somebody's liberty away, stopping them and saying, It's you?

> A:   No, experience comes into play.  I mean, he had a pair of black jeans on.  I mean, he's tall, medium build, black thick glasses with black rims in his hands.  I mean, he's sweating like he's been running is what I thought.  His heart's pounding.  I mean –

> ***

> Q:   Did you – when he told you he didn't do it, what did you respond to him?

A:     Nothing.  I mean, everybody says they don't do it.

Q:     Okay.  You believed automatically at that point that he was guilty?

A:     No, I believed he was guilty when Ms. Sheinoha [the victim] identified him.

Q:     So because he's a black male, it didn't matter what color his eyes were, because in your mind, if you're a black male, you have brown eyes.

A:     From experience.

MS. GENNUSA:    One moment.  I have nothing further.

(Tr. of Proceedings vol. I, 165-66, 168, Nov. 30, 2005, attached herto as App. B.)[9]  Specifically, in the exchange at issue, the trial counsel put to Corporal Etheridge a question that required only a yes or no answer: "You believed automatically at that point that he was guilty?" (App. B 168.)[10]  Corporal Etheridge responded in the negative and then elaborated, stating:  "No, I believed he was guilty when Ms. Sheinoha identified him."  (App. B 168.)[11]  This exchange shows trial counsel was attempting only to elicit testimony that would indicate Corporal Etheridge had a preconceived notion of the Defendant's guilt.  In this respect, the Court finds that trial counsel's line of questioning, and her strategy, was not improper.

The Defendant claims that, upon hearing Corporal Etheridge's opinion testimony regarding his guilt, Ms. Gennusa should have moved the court either to strike the Corporal's statement, issue a curative instruction, or to declare a mistrial.  When an investigating officer, such as Corporal Etheridge, offers opinion testimony, such "' an opinion about the ultimate issue of guilt could convey the impression that evidence not presented to the jury, but known to the investigating officer, supports the charges against the defendant.'"  Battle, 19 So. 3d at 1048 (quoting Martinez, 761 So. 2d at 1080).  This raises the prospect of unfair prejudice.  In the instant cause, however, the Court fails to find a

---

9     Ex. D at 165-66, 168.
10    Ex. D at 168.
11    Ex. D at 168.

reasonable probability that the Corporal's opinion testimony affected the outcome of the case.

Corporal Etheridge's testimony indicates he based his opinion of the Defendant's guilt on the witness's identification of the Defendant. Specifically, the Corporal testified: "No, I believed he was guilty when Ms. Sheinoha identified him."  (App. B 168.)[12]  In other words, the Corporal's testimony shows he did not believe the Defendant guilty prior to the witness's identification and, correspondingly, it was the identification that convinced the Corporal the Defendant was guilty. Therefore, there is little reason to conclude that a juror would believe Corporal Etheridge based his opinion of guilt on evidence not presented to the jury, since the witness's identification of the Defendant was made known to the jury through the witness's own testimony and since it appears from the Corporal's testimony that it was this witness identification that convinced the Corporal the Defendant was guilty.  As a result, it is unlikely Corporal Etheridge's opinion testimony impinged on the jury's determination.  In addition, there has been no showing that the Corporal's opinion testimony regarding the Defendant's guilt was ever referenced by either the trial counsel or the State during the remainder of the trial.  Consequently, the Court finds the Defendant was not prejudiced by the admission of Corporal Etheredge's [sic] opinion testimony.  Given the Defendant has failed to meet the prejudice prong of the Strickland test regarding Ground Three, it is not necessary to determine whether the Defendant has met the other prong for this ground.  Zakrzewski, 866 So. 2d at 692.[13]

(Ex. T at 186-89).

Petitioner appealed the trial court's denial of post-conviction relief, and the Fifth District Court of Appeal affirmed without a written opinion.  Blackwell, 83 So. 3d 740; (Ex. Z).  Thus, there are qualifying opinions under AEDPA from the state trial and appellate courts.  Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable

---

[12]    Ex. D at 168.
[13]    Zakrzewski v. State, 866 So. 2d 688 (Fla. 2003).

application thereof, and was not based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to relief on Ground Two.

## C. Ground Three

In Ground Three, Petitioner contends that counsel gave ineffective assistance by failing to request a limiting instruction on the use of Petitioner's prior felony convictions. (Petition at 6). Petitioner argues that counsel should have requested the judge to instruct the jury not to use Petitioner's prior convictions as evidence of guilt, and that counsel's failure to do so caused (1) the jury to use the prior convictions as evidence of propensity, and (2) Petitioner to be deprived of a fair trial. (Id.).

Petitioner raised this issue in his state motion for post-conviction relief. The state court initially noted that counsel did move in limine to exclude mention of Petitioner's prior convictions, but that the motion was denied and counsel did not seek any further jury instructions. (Ex. R at 83-84). The court found that Petitioner presented a facially sufficient claim to warrant an evidentiary hearing. (Id. at 84).

The state court ultimately denied the claim following the evidentiary hearing. In its order, the court explained as follows:

> In Ground Four, the Defendant alleges trial counsel was ineffective for failing to request a limiting instruction regarding the Defendant's prior convictions. The prior convictions were admitted as a result of the Defendant testifying at trial. (Tr. of Proceedings vol. II, 235-37, Nov. 30, 2005, attached hereto as App. C.)[14]  In his Motion, the Defendant contends the lack of a limiting instruction "permitt[ed] the jury to use the Defendant's six prior convictions as evidence of propensity, bad character, and as evidence of guilt to the charged crime."  At the evidentiary hearing, the Defendant testified he did not ask Ms. Gennusa

---

[14]     Ex. D at 235-37; Ex. T at 226-28.

to request the Court [to] issue a limiting instruction because he was unaware that such an instruction existed.  The Defendant testified he did not become aware of limiting instructions until he began doing legal research after he had been convicted.  Despite the fact that he did not know to ask for a limiting instruction, however, he contends his attorney still should have requested one.

At the evidentiary hearing, Ms. Gennusa testified that the Defendant did not ask her to request a limiting instruction.  She also indicated that she did not request one.  Ms. Gennusa testified she filed a motion in limine in an attempt to keep the Defendant's prior felony convictions from being admitted, but the motion was denied.  She also testified that she explained to the Defendant that if he testified at trial, the jury might hear of his prior convictions and use those against him.  Ms. Gennusa further state that, during trial, she recalled "very vividly" the jurors' reaction to learning this information and, as a result, that during her closing argument she implored the jurors not to base their decision on the fact that the Defendant had prior convictions.

When testimony regarding a defendant's prior felony convictions is admitted solely for the purpose of casting doubt on the defendant's credibility, a trial counsel may ask the court for a limiting instruction, pursuant to section 90.107, Florida Statutes.  Lightfoot v. State, 591 So. 2d 305, 307 (Fla. 1st DCA 1991).  Upon the trial counsel's request, the court "shall restrict such evidence to its proper scope and so inform the jury at the time it is admitted."  Fla. Stat. § 90.107.  Although a trial court is not required to provide a limiting instruction in the absence of a request for one, Lightfoot v. State, 591 So. 2d at 307; Moss v. State, 581 So. 2d 182, 182-83 (Fla. 2d DCA 1991) (per curiam), a trial court commits error when a limiting instruction is requested and the trial court refuses to give one, Varnadore v. State, 626 So. 2d 1386, 1386 (Fla. 5th DCA 1993).  Despite this, the Fifth District Court of Appeal has found that, on balance, such an error is harmless where "the trial court gave the standard jury instructions at the close of all of the evidence" and where the defense counsel's closing argument informed the jury the defendant's prior convictions were only to be considered in weighing the defendant's credibility.  Id.

In the instant case, it is undisputed that Ms. Gennusa failed to ask the Court for a limiting instruction when she elicited testimony from the Defendant that he had six prior felony convictions.  (App. C 235-37.)[15] It is also undisputed that, in the absence of a request for a limiting

---

[15]   Ex. D at 235-37; Ex. T at 226-28.

instruction, the Court did not give one.  To assess whether the Defendant was prejudiced as a result of a limiting instruction having not been given, the Court now turns to the record of the trial and its related proceedings.

During voir dire, Ms. Gennusa inquired of the prospective jurors what their feelings might be regarding testimony given by a witness who is shown to have a criminal record.  (Tr. of Proceedings 87-88, Nov. 28, 2005, <u>attached</u> <u>hereto</u> as App. D.)[16]  During the exchange, the Court briefly clarified the relevance of such a criminal record in that context.

|  |  |
|---|---|
| MS. GENNUSA: | … [I]f you hear a gentleman or a woman get up there and they have prior convictions of felonies or something, is that going to take away from your ability to believe or to listen truthfully to their testimony? |
| | Does anybody have a no?  If you do, just raise your hand. |
| A VENIREMAN: | It would effect [sic] their credibility somewhat. |
| MS. GENNUSA: | Yes, sir? |
| A VENIREMAN: | Are you saying to have no influence whatsoever? |
| MS. GENNUSA: | Well – |
| THE COURT: | Wait a minute, the issue is whether they would listen and then weigh their evidence. |
| MS. GENNUSA: | Exactly. |
| THE COURT: | That could be a factor in their determining whether it's credible or not, but that's up to you to decide at that point. |

---

16      Ex. T at 233-34.

(App. D 87-88.)[17]  After swearing in the jury, the Court instructed the jurors that "[y]our verdict must be based solely on the evidence or lack of evidence and the law," (Tr. of Proceedings vol. I, 9, Nov. 30, 2005, <u>attached hereto</u> as App. E)[18], and that "[t]his case must be tried by you only on the evidence presented during trial in your presence and in the presence of the defendant, the attorneys, and the judge," (App. E 11-12).[19]

Later at trial, prior to the Defendant taking the stand, and out of the presence of the jury, Ms. Gennusa argued a motion in limine in an attempt to keep testimony of the Defendant's prior felony convictions from being introduced.  She was concerned the convictions might prejudice the jury.  Ms. Gennusa stated: "Meaning we believe it would prejudice the jury that they would not be listening to facts of this case, they'd be judging him on prior criminal convictions and not specifically on this case." (App. C 203.)[20]  She was also concerned that the number of convictions itself could prove unduly prejudicial.  (App. C 204-10.)[21]  The Court denied the motion in limine.  (App. C 211.)[22]

In her closing argument, Ms. Gennusa made reference to the Defendant's prior convictions when she stated to the jury:

> My client stood up there and we knew he was going to tell you that he had six felony convictions.  We didn't hide it, we knew it was going to come out and my client made the decision to get up there and tell you what happened on that day.  That is not enough for the State to prove to you that he committed this crime.  And, in fact, you-all promised me that you would not hold that against somebody if, in fact, they had a criminal record.
>
> For credibility, if you want to weigh the credibility, that's fine.

(Tr. of Proceedings vol. III, 301, Dec. 1, 2005, <u>attached hereto</u> as App. F.)[23]  The record fails to show that the State made reference to these

---

17   Ex. T at 233-34.
18   Ex. T at 240.
19   Ex. T at 242-43.
20   Ex. D at 203; Ex. T at 216
21   Ex. D at 204-10; Ex. T at 217-23.
22   Ex. D at 211; Ex. T at 224.
23   Ex. D at 301; Ex. T at 247.

prior convictions either in its cross-examination of the Defendant or in its closing argument.

At the close of the evidence, the Court gave the standard jury instructions. (App. F 326-29.)[24]   In those instructions the Court informed the jury: "The defendant in this case has become a witness. You should apply the same rules of consideration to – to consideration of his testimony that you apply to the testimony of the other witnesses." (App. F 328.)[25]

In the Defendant's Reply Brief, the Defendant notes that the trial counsel argued the motion in limine outside the presence of the jury. The Defendant asserts that, as a result, the motion in limine did nothing to advise the jury of how it was to consider the Defendant's prior felony convictions. The Court agrees. Elsewhere in the record, however, there appear instances where the jury was made aware that evidence of the Defendant's prior felony convictions could be used in weighing the Defendant's credibility but not for other purposes. Namely, the jury was made aware during voir dire, (App. D 87-88)[26], and again during the trial counsel's closing argument, (App. F 301).[27]   In addition, there has been no showing the State ever made reference to the Defendant's prior convictions in the presence of the jury. The facts suggest the Defendant was not prejudiced by trial counsel's failure to request a limiting instruction.   More specifically, there has been no showing that any of the jurors improperly used the testimony of the Defendant's prior convictions in arriving at a verdict.   In the absence of such a showing, the Court concludes the lack of a limiting instruction did not prejudice the Defendant. See Murphy v. State, 252 So. 2d 385, 387 (Fla. 3d DCA 1971) (per curiam) (finding that, absent a showing of bias, jurors who might have been previously aware of defendant's prior conviction are still presumed to base their verdict on evidence presented at trial).

Moreover, the Court gave the standard jury instructions at the close of evidence. These instructions admonish the jury to arrive at a verdict by "follow[ing] the law as it is set out in these instructions." (App. F 328.) Without evidence to the contrary, "[t]he law presumes that the jury has followed all of the trial court's instructions." Garzon v. State, 939 So. 2d 278, 285 (Fla. 4th DCA 2006); accord Sutton v. State, 718 So. 2d 215, 216 n.1 (Fla. 1st DCA 1998); cf. Hallford v. Culliver, 459 F.3d 1193, 1204

---

24      Ex. D at 326-29; Ex. T at 249-52..
25      Ex. D at 328; Ex. T at 251.
26      Ex. T at 233-34.
27      Ex. D at 301; Ex. T at 247.

> (11th Cir. 2006) (per curiam) (finding trial court's instructions "plainly and correctly conveyed to the jury" the acts the jury might consider in rendering its recommended sentence; "[f]ailure to request a limiting instruction, under the circumstances, was not ineffective."). Given the Defendant has failed to meet the prejudice prong of the <u>Strickland</u> test regarding Ground Four, it is not necessary to determine whether the Defendant has met the other prong for this Ground. <u>Zakrzewksi</u>, 866 So. 2d at 692.

(Ex. T at 189-94).

Petitioner appealed the denial of post-conviction relief to the Fifth District Court of Appeal, which affirmed without a written opinion. <u>Blackwell</u>, 83 So. 3d 740; (Ex. Z). Thus, there are qualifying opinions under AEDPA from the state trial and appellate courts. Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application thereof, and was not based on an unreasonable determination of the facts. <u>See</u> 28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to relief on Ground Three.

### D. Ground Four

In Ground Four, Petitioner argues that the cumulative effect of his attorney's errors deprived him of due process and the effective assistance of counsel. (Petition at 7). Petitioner raised this issue in his state post-conviction motion, and the state trial court denied the claim without a hearing. (Ex. R at 84). The state appellate court also affirmed without a written opinion. <u>Blackwell</u>, 83 So. 3d 740; (Ex. Z). Thus, there are qualifying decisions under AEDPA from the state trial and appellate courts.

19

Whether cumulative error is cognizable on habeas review is an open question. See Williams v. Anderson, 460 F.3d 789, 816 (6th Cir. 2006) ("[C]umulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."); Lorraine v. Coyle, 291 F.3d 416, 447 (6th Cir.2002), amended on other grounds, 307 F.3d 459 (6th Cir.2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."). But see Parle v. Runnels, 505 F.3d 922, 928–29 (9th Cir.2007) (recognizing claims of cumulative error in federal habeas, stating that "the Supreme Court has clearly established that the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal") (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Chambers v. Mississippi, 410 U.S. 284, 290 n.3, 298, 302–03 (1973)).

The Eleventh Circuit has not resolved this issue, Morris v. Sec'y, Dep't of Corrections, 677 F.3d 1117, 1132 n.3 (11th Cir. 2012), nor need this Court. Assuming, without deciding, that the cumulative error doctrine applies on habeas review, it does not save Petitioner. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir.2005) (internal quotation marks omitted). The Court "address[es] claims of cumulative error by first considering the validity of each claim individually, and then examining any errors

20

that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Morris, 677 F.3d at 1132 (citing United States v. Calderon, 127 F.3d 1314, 1333 (11th Cir.1997)). The cumulative error doctrine does not apply where there are no errors, or where there is only one error that was individually harmless, because there are no errors to accumulate. United States v. House, 684 F.3d 1173, 1210 (11th Cir. 2012).

Here, the state trial court did not find that trial counsel committed any errors, but in part that is because it disposed of Ground Three (Ground Four in the state motion) on Strickland's prejudice prong without ruling on the deficiency prong (see Ex. T at 194). Even assuming that it was deficient for counsel not to request a limiting instruction on the jury's use of Petitioner's prior convictions, that would be only one instance of attorney error. The state courts found – and this Court agrees – that counsel was not deficient on the other two grounds. The state courts also found – and this Court agrees – that counsel's failure to request a limiting instruction was not prejudicial. Because that lone error was harmless and there were no other errors, there were no errors to accumulate. See House, 684 F.3d at 1210. Accordingly, Petitioner is not entitled to relief on a claim of cumulative attorney error. Cf. Forrest v. Steele, 764 F.3d 848, 860-61 (8th Cir. 2014), pet. for cert. filed (Apr. 6, 2015) (No. 14-9289, 14A729) (Strickland does not recognize cumulative ineffective assistance claims).

### E.  Ground Five

In Ground Five, Petitioner argues that the state court erred in not suppressing an out-of-court identification of him, which he claims violated his rights under the Sixth and Fourteenth Amendments.  (Petition at 11).  The identification was in the form of a "one-man show up," which took place in a liquor store parking lot less than an hour after the robbery.  The facts relevant to the out-of-court identification are set forth in Petitioner's initial brief on direct appeal:

> [Petitioner] filed pretrial motions to suppress the out-of-court identification and the money seized as a result of his arrest.  At the hearing on the motions Caryn Scheinoha, who worked at Peterson's Bakery, testified that on April 9, 2004 a man entered the bakery and purchased a donut.  While Scheinoha was getting change, the man told her to put all the money in the bag with the donut.  He stated that he had a gun and would shoot her.  She did not see a gun, but she did see a bulge under the man's shirt.  Scheinoha put approximately $100.00 in small bills in the bag and the man left.  Scheinoha described the man as a black male, approximately 6'2", wearing black jeans, a black belt, a white tee-shirt with blue stripes, and thick black rimmed glasses.  After speaking with Scheinoha, Officer Barbara Clifford issued a BOLO.
>
> Officer Jason Etheredge received information that an individual matching the BOLO was in a cab on King Street.  Etheredge conducted a traffic stop and detained appellant.  Based upon the BOLO indicating that the robber might be armed, Etheredge conducted a patdown for weapons.  He located "wadded up" cash in [Petitioner's] front pockets.  He removed the cash to check for razor blades and returned it to [Petitioner's] pockets.
>
> Scheinoha was taken to a show-up at ABC Liquor.  She was in the back of a patrol car; [Petitioner] was handcuffed and approximately 30 feet away standing beside a patrol car.  He was not wearing a shirt.  Scheinoha identified [Petitioner] as the robber after she observed him wearing glasses.  She admitted that [Petitioner] was the only handcuffed black male at the show-up.

(Ex. J at 2-3) (internal citations omitted).  The victim also testified in the suppression hearing that during the robbery, she was able to get a good look at the perpetrator's face.  (Ex. FF at 18).  The victim was able to observe the robber over the course of about four minutes, and at all times she was only three to ten feet away from him, having had an unobstructed view throughout.  (Id. at 18-19).  The victim promptly relayed a description of him to the police.  (Id. at 18).  Less than an hour after the robbery, the victim identified Petitioner at the show-up.  (Id. at 19-20).  Prior to the identification, the police merely told the victim that they had apprehended someone who matched her description, but did not say they had caught the perpetrator.  (See id. at 20).  Initially, the victim was "99%" sure that the man in the ABC parking lot was the robber, although he was shirtless and without his glasses.  (Id. at 21).  Once Petitioner put on his glasses, however, the victim was "absolutely" sure that he was the robber.  (Id. at 23).

In ruling on the motion to suppress, the state trial court acknowledged that one-man show-up identifications are inherently suggestive.  (Ex. GG at 151). However, the court denied the motion because there was not a substantial likelihood of misidentification.  (Id. at 153).  The court explained as follows:

> Under the facts presented at the hearing, the Court holds that the show-up procedure utilized by police did not give rise to a substantial likelihood of misidentification.  The victim stated that she was able to clearly view the Defendant for a good length of time, and that her attention was focused on him because he was her only customer.  The victim's description of the Defendant was accurate in that he was in fact a black male, was wearing black jeans when he was apprehended, was approximately the correct age, and did have on his person the distinctive glasses which she had described.  While there were some discrepancies in her description – he was not wearing a shirt when apprehended, and

his shoes were the wrong color – the overall description which she provided proved to be accurate.  The level of certainty displayed by the witness was very high, at 100% once the Defendant put his glasses on. Finally, the length of time between the crime and the identification was reasonable.  See, <u>Perez</u>, 648 So. 2d at 719 (period of 1-2 hours between crime and show-up upheld)[28]; <u>Lassiter v. State</u>, 858 So. 2d 1134 (Fla. 5th DCA [2003]) (period of 3 hours between crime and show-up upheld). While some slight discrepancies exist between the testimony of the witnesses regarding whether or not the victim got out of the car to view the Defendant, and the distance between the victim and the Defendant, under the totality of the circumstances the Court holds that the show-up did not give rise to a substantial likelihood of misidentification.

(Ex. GG at 153).  Petitioner appealed the trial court's denial of the motion to suppress on direct review.  The appellate court per curiam affirmed the trial court in an opinion consisting of a single citation to <u>Fitzpatrick v. State</u>, 900 So. 2d 495, 517-18 (Fla. 2005) (holding that the test for suppression of an out-of-court identification is (i) whether the police used an unnecessarily suggestive procedure to obtain the out-of-court identification; and (ii) if so, considering all the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification).  <u>Blackwell v. State</u>, 944 So. 2d 538, 538 (Fla. 5th DCA 2006); (Ex. L).

Thus, there are qualifying opinions under AEDPA from the state trial and appellate courts.  This Court's task is to determine whether the state courts' adjudication of this claim was contrary to clearly established federal law, involved an unreasonable application thereof, or was based on an unreasonable determination of the facts.  <u>See</u> 28 U.S.C. § 2254(d).

---

[28]   <u>Perez v. State</u>, 648 So. 2d 715 (Fla. 1995).

First, however, the State contends that Petitioner's challenge to the denial of his motion to suppress is barred from habeas review under <u>Stone v. Powell</u>, 428 U.S. 465 (1976).  In <u>Stone</u>, the Supreme Court held that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.  In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

428 U.S. at 494-95 (footnotes omitted).  The record reflects that the state court did indeed provide Petitioner a full and fair opportunity to litigate his Fourth Amendment claim.  The state court held a suppression hearing where Petitioner challenged the reasonableness of his seizure prior to the identification, as well as the identification itself.  (<u>See</u> Ex. FF, generally).  At the hearing, Petitioner was represented by counsel and had the opportunity to call and confront witnesses, as well as to present evidence.  Following the hearing, the trial court issued a reasoned written opinion explaining its decision to deny the motion.  (<u>See</u> Ex. GG).  After trial, Petitioner also received appellate review of the lower court's order, which also resulted in a written opinion – albeit a brief one.  (<u>See</u> Ex. L).  Thus, to the extent Petitioner would raise a <u>Fourth</u> Amendment challenge in his habeas petition, it would be barred pursuant to <u>Stone</u> because he received a full and fair opportunity to litigate the claim in state court.

Ground Five, however, does not appear to present a Fourth Amendment challenge.  Rather, it seems that what Petitioner is challenging is the out-of-court

identification, which he claims was so unnecessarily suggestive that it violated his due process rights under the Sixth and Fourteenth Amendments.   The State is incorrect to assert that <u>Stone</u> bars such a claim from habeas review.   <u>Stone</u> bars only re-litigation of <u>Fourth</u> Amendment claims on habeas review, and the Supreme Court has since been careful to limit <u>Stone</u>'s reach.  <u>See</u> <u>Withrow v. Williams</u>, 507 U.S. 680, 687 (1993).  For example, while pure Fourth Amendment claims may not be re-litigated on habeas review, a prisoner may allege that his attorney's incompetence in connection with a motion to suppress evidence deprived him of his Sixth Amendment right to the effective assistance of counsel.  <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374-75 (1986).  In <u>Withrow</u>, the Supreme Court declined to extend <u>Stone</u> to Fifth Amendment <u>Miranda</u> claims raised in the habeas petition.  507 U.S. at 682.  Even more pertinently, <u>Stovall v. Denno</u>, 388 U.S. 293 (1967) (<u>abrogated on other grounds by</u> <u>Harper v. Virginia Dep't of Taxation</u>, 509 U.S. 86 (1993)), the seminal Supreme Court case holding that an unnecessarily suggestive pre-indictment identification could violate due process, was decided in the context of habeas review.  <u>See</u> <u>Stovall</u>, 388 U.S. at 294.  Although the Supreme Court denied relief in <u>Stovall</u>, <u>id.</u> at 301-02, it was taken for granted that such a due process claim was cognizable in the habeas context.  <u>Cf. also</u> <u>Cikora v. Dugger</u>, 840 F.2d 893, 895-97 (11th Cir. 1988) (addressing the merits of a habeas petitioner's challenge to an out-of-court identification procedure); <u>Johnson v. Dugger</u>, 817 F.2d 726, 728-29 (11th Cir. 1987) (same).

Indeed, finding that a challenge to an out-of-court identification is cognizable on habeas review is consistent with the Supreme Court's explanation of <u>Stone</u> in

Withrow.  Fourth Amendment claims are not cognizable on habeas review in large part because the remedy for a Fourth Amendment violation – exclusion of the evidence – does not "enhance the soundness of the criminal process by improving the reliability of evidence introduced at trial. Quite the contrary, as we explained in Stone, the evidence excluded under Mapp 'is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant.'"  Withrow, 507 U.S. at 691 (quoting Stone, 428 U.S. at 490).  By contrast, excluding a statement elicited without Miranda warnings does promote "the correct ascertainment of guilt," because a "system of criminal law enforcement which comes to depend on the confession will, in the long run, be less reliable and more subject to abuses than a system relying on independent investigation."  Id. at 692 (internal quotation marks and citations omitted).  Likewise, an out-of-court identification that is unduly suggestive and unreliable would directly undermine the "correct ascertainment of guilt."  Were an identification procedure to give rise to an "irreparable mistaken identification," Stovall, 388 U.S. at 302, excluding such an identification would advance the truth-finding process at least as much as excluding a confession taken without Miranda's safeguards.  Accordingly, Petitioner's challenge to the out-of-court identification procedure is cognizable on habeas review and is not barred by Stone. The Court will turn to the merits of the claim.

There is a two-step analysis when evaluating the constitutionality of a trial court's decision to admit an out-of-court identification:

First, we must determine whether the original identification procedure was unduly suggestive. Dobbs v. Kemp, 790 F.2d 1499, 1506 (11th

27

Cir.1986), modified in part on other grounds, 809 F.2d 750 (11th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 2203, 95 L.Ed.2d 858 (1987). If we conclude that the identification procedure was suggestive, we must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable. See Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); Dobbs, 790 F.2d at 1506. This second stage involves consideration of five factors identified by the Supreme Court in Neil v. Biggers: opportunity to view, degree of attention, accuracy of the description, level of certainty, and length of time between the crime and the identification. 409 U.S. at 199, 93 S.Ct. at 382.

Cikora, 840 F.2d at 895.  This Court reiterates that under 28 U.S.C. § 2254(d), it must defer to the state courts' application of this test. This Court's task is only to determine whether, in admitting the out-of-court identification, the state courts' adjudication was contrary to clearly established federal law, an unreasonable application thereof, or based on an unreasonable determination of the facts.  The Court notes that the Fifth District Court of Appeal cited Fitzpatrick v. State, 900 So. 2d 495, 517-18 (Fla. 2005), in affirming the denial of the motion to suppress.  As the Fitzpatrick test for admitting or excluding out-of-court identifications matches the test that has derived from Stovall v. Denno and Neil v. Biggers, the state courts identified the correct governing legal principle.  Thus, Petitioner is only entitled to relief if he can point to a materially indistinguishable Supreme Court case in which the Supreme Court excluded an out-of-court identification; if he can show that the state court's adjudication was an objectively unreasonable application of clearly established Supreme Court case law; or if he can show that the decision was based on an objectively unreasonable determination of the facts.  He has not done so.

In this case, the state trial court acknowledged that a "show-up" identification procedure like the one used here is inherently suggestive.  (Ex. GG at 151).  This Court does not dispute that conclusion.  Instead, the court concluded that there was not a substantial likelihood of misidentification.  (Id. at 153).  The trial court did not cite Neil v. Biggers, but it applied the Biggers factors in reaching that conclusion.[29] The court explained that (1) the victim/ eyewitness was able to clearly view Petitioner for a good length of time, (2) the victim's attention was focused solely on Petitioner because he was her only customer, (3) the victim's description of Petitioner was generally accurate despite some slight discrepancies, (4) the victim was highly certain of the identification, and (5) the length of time between the crime and the identification was brief.  (Ex. GG at 153); accord Biggers, 409 U.S. at 199.  The suppression hearing transcript supports the trial court's findings.  (See Ex. FF at 18-23).  In addition, the victim identified Petitioner in court at trial, stating the following:

> [WITNESS]:         I would know it was him anywhere.
>
> [PROSECUTOR]:   Why is that?
>
> [WITNESS]:         Because I know his face.  It was – it made such an impression in my head that I know would know him if he was walking down the street.  I would know him in a crowd of people.  I would know him anywhere. It wasn't because somebody persuaded me.

(Ex. D at 41).

---

[29]    In order to survive review under 28 U.S.C. § 2254(d), a state court need not cite, or even be aware of, the Supreme Court's cases "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002).

Thus, notwithstanding the suggestiveness of the identification procedure, the victim's identification appears to have been reliable.  A thorough review of the law and the record reveals that the state court's decision was not contrary to clearly established federal law, was not an unreasonable application thereof, and was not based on an unreasonable determination of the facts.  Accordingly, Petitioner is not entitled to relief on Ground Five.

## F. Ground Six

Finally, in his sixth ground for relief, Petitioner claims that the trial court violated his right to due process by allowing the prosecutor to comment on the defense's failure to call one "Shaneva" as a witness.  (Petition at 12).  At trial, Petitioner testified that on the day of the robbery, he was with Shaneva at a Red Carpet Inn between approximately 12:30 p.m. and 3:00 to 3:15 p.m.  (Ex. D at 225-26).  After leaving the hotel, Petitioner testified that he attempted to hail a ride from a police officer at around 3:30 or 4:00 p.m., and being unsuccessful in that, tried to hail a cab.  (Id. at 226-27).  The robbery occurred around 3:30 p.m.  (Id. at 43, 273).  Petitioner did not inform the State about Shaneva until the day of trial.  (See id. at 270).[30]

Prior to closing argument, the State sought permission to comment on Petitioner's failure to call Shaneva, explaining that Petitioner's time with her

---

[30]     Although Petitioner submitted a Notice of Alibi prior to trial (Ex. C), the Notice only listed Lieutenant B.J. Hardy of the St. Johns County Sheriff's Office, but not Shaneva.

constituted an alibi.  (Id. at 270-71).   Under Florida law, the prosecution may

comment on a defendant's failure to call an alibi witness where that witness was not

equally accessible by the State.  Washington v. State, 811 So. 2d 724, 725 (Fla. 3d

DCA 2002) ("Generally, the state may not comment upon a defendant's failure to

present evidence, thereby shifting the burden to the defendant. However, there is a

'narrow exception to allow comment when the defendant voluntarily assumes some

burden of proof by asserting the defenses of alibi, self-defense, and defense of others,

relying on facts that could be elicited only from a witness who is not equally available

to the state.'") (quoting Jackson v. State, 575 So. 2d 181, 188 (Fla. 1991)).   Defense

counsel opposed the State, arguing that Petitioner's rendezvous with Shaneva did not

constitute an alibi because it ended around 3:00 p.m., and thus did not encompass

the precise moment when the robbery occurred, at approximately 3:39 p.m.  (Id. at

271-73).  The trial court agreed with the State that Shaneva was part of an alibi, and

explained as follows:

> THE COURT:        But the inference that you left the jury with is that
> – and here's the way I recall it, okay, about the
> inference you left the jury with is that after lunch at
> the St. Francis House, okay, he and this lady went
> over to a motel, hung around there for a couple hours
> –
>
> MRS. GENNUSA:   Right.
>
> THE COURT:        – he immediately left there and walked to this other
> place –
>
> MRS. GENNUSA:   And started walking down U.S. 1.
>
> THE COURT:        – and so the inference was that the timing, the
> timing when put together as a whole, produced the

alibi that he couldn't have possibly been at that point doing something else at Peterson's Bakery.

And if the jury believes that, then that will exonerate your client.  If the jury doesn't believe that, they may still find him not guilty, but that's – the whole issue of the alibi fits together with the way it was presented.  I'm just saying the way it was presented before the jury shows that he was tied up after lunch for the whole period of time, until he saw Lieutenant Hardy basically, and then – and he couldn't possibly have done the robbery.  And that's the way it was presented.

(Id. at 273-74).  The court also agreed with the State that Shaneva had a more intimate relationship with Petitioner and was thus more easily available to him than to the State as a witness, and so granted the prosecutor permission to comment on Petitioner's failure to present the woman at trial (id. at 272-78).  In closing argument the State pointed out the fact that Petitioner failed to bring forth Shaneva as a witness.  (Ex. D at 292).

Petitioner argues that the court erred in characterizing Shaneva as an alibi witness, and that permitting the prosecutor to comment on his failure to call her violated his right to due process by shifting the burden to him to prove his innocence.  (Petition at 12).  Petitioner raised this issue in his brief on direct appeal, though he did not cite any federal law, federal constitutional provision, or even use the phrase "due process."  (See Ex. J at 16-18).  However, the State does not invoke the procedural bar against claims not presented in state court as a federal constitutional question.  Rather, the State concedes that the claim was exhausted (Doc. #14, Supplemental Response at 5), but argues that federal habeas relief may not be

granted on state court evidentiary rulings that do not affect the fundamental fairness of the trial (id. at 8-10) (citing McCoy v. Newsome, 953 F.2d 1252, 1265 (11th Cir. 1992)).

The appellate court affirmed the conviction on direct appeal without addressing this specific issue. Blackwell, 944 So. 2d 538; (Ex. L). Nevertheless, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011) (citing Harris v. Reed, 489 U.S. 255, 265 (1989)). Accordingly, there is a qualifying decision under AEDPA from the state courts. This Court's task is to determine whether the state courts' adjudication of this claim was contrary to clearly established federal law, involved an unreasonable application thereof, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

The State violates a defendant's right to due process when it shifts the burden of proof to the defendant to establish his innocence. See Patterson v. New York, 432 U.S. 197, 215 (1977) ("[A] State must prove every ingredient of an offense beyond a reasonable doubt and… may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense."). Such "burden-shifting" occurs, for example, when a prosecutor makes an argument suggesting that the defendant has an obligation to produce evidence or prove his innocence. United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992).

However, when a defendant, while testifying in his own behalf, first mentions the identity of a missing witness as part of an alibi, and the witness was particularly within the power of the defendant to call, the prosecution may comment on the fact that defendant failed to call that witness.  United States v. Lehmann, 613 F.2d 130, 135-36 (5th Cir. 1980).[31]  "The failure of a party to produce as a witness one peculiarly within the power of such party creates an inference that such testimony would be unfavorable, and may be the subject of comment to the jury by the other party."  Id. at 136.  "[T]he question of equal availability of a witness not called is largely a question of fact, and various courts have regarded all manner of circumstances as bearing upon the matter."  McClanahan v. United States, 230 F.2d 919, 925-26 (5th Cir. 1956), cert. denied, 352 U.S. 824 (1956) (citation omitted).  Therefore, in the case of an uncalled witness who was particularly more available to the defendant than the government, the prosecution may comment on a defendant's failure to present that witness without committing unconstitutional burden-shifting.

The underlying premise of Petitioner's claim of error is that Shaneva was not part of an alibi, and therefore the trial court erred in allowing the State to comment on her absence.  (Petition at 12).  However, Petitioner's opening statement belies the claim that Shaneva was not part of an alibi.  In the opening statement, defense counsel stated that on the afternoon of the robbery, Petitioner had spent "a couple of

---

[31]    In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

hours" with Shaneva at a hotel on a different side of town.  (Ex. D at 22).  Specifically, defense counsel stated:

> I'm going to take you back a little bit to April 9th of 2004.  There was a lot going on on that day.  Approximately 3:30 in the afternoon you had –as [the prosecutor] just told you, there was a robbery occurring on 113-and-a-half King Street at Peterson's Bakery.  But I'm going to direct you to the north part of town, a hotel by the name of The Red Carpet Inn, where my client, Danny Blackwell, you will hear – we expect the testimony to show, <u>that at that point in time, that particular time, he was just leaving that hotel</u>.

(Ex. D at 21) (emphasis added).  Thus, the trial court accurately observed that the inference Petitioner wanted the jurors to conclude from his rendezvous with Shaneva was that he could not have committed the robbery because he was at the hotel when the crime occurred.  Shaneva was therefore plainly part of an alibi defense.  Moreover, the State and the trial court accurately observed that Shaneva was not equally available to the State.  (<u>Id.</u> at 269-71, 277).  The State learned of Shaneva for the first time during opening statements (<u>id.</u> at 270); Petitioner did not supply Shaneva's full name; only Petitioner had been acquainted with Shaneva; and only Petitioner had any information on her whereabouts, such as where she worked or socialized.  Because Petitioner was better situated than the State to summon Shaneva, and yet failed to do so, it "creates an inference that [her] testimony would be unfavorable, and may be the subject of comment to the jury by the [government]." <u>Lehmann</u>, 613 F.2d at 136.  Therefore, the state trial court did not violate Petitioner's right to due process by permitting the prosecutor to comment on Shaneva's absence.  Petitioner has not identified how the trial court's ruling was contrary to clearly established federal law,

an unreasonable application thereof, or based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to relief on Ground Six.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.  The Petition (Doc. #1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.  The **Clerk of the Court** shall enter judgment accordingly.

3.  If Petitioner appeals this Order, the Court denies a certificate of appealability.[32] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk of the Court** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

---

[32] If Petitioner appeals the dismissal of the Petition, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller–El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Here, after consideration of the record as a whole, this Court will deny a certificate of appealability.

4.  The **Clerk of the Court** shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 22nd day of September, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:

Pro se party
Counsel of record